**STATE OF HAWAII,** Plaintiff–Appellee, v. **SHONNA K. NORTON,** Defendant–Appellant

NO. 14955

(FC–CRIM. NO. 90–3039)

AUGUST 13, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY LUM, C.J.

This court is called upon to reverse a criminal conviction for abuse of a family or household member, in violation of Hawaii Revised Statutes § 709–906 (1985). The error claimed is that, in a bench trial, the judge's ruling included a statement indicating that she was using an erroneous standard for the prosecution's burden of proof. As appellate courts must be firmly convinced that the trial court used the correct standard, we reverse.

## I.

Appellant and her boyfriend (now spouse), lived together at the time of the alleged abuse. When the police arrived, the boyfriend had a cut on his forehead and told the police that appellant had thrown and struck him with a VCR. The boyfriend put that in writing on an HPD Form 252.

Appellant and her boyfriend married two days prior to the trial. At the trial, the boyfriend told the court that he had tripped on a recliner and struck his head on a coffee table. Appellant told the same story.

In ruling, the judge discredited their testimony, stating that it was obvious that the boyfriend was merely protecting his new wife. However, in its general finding the court stated that:

> [T]here is sufficient substantial credible evidence to adjudge the Defendant guilty of the offense of Abuse of a Household Member.

On appeal, appellant raises the issue of whether the judge applied the proper standard of proof.

## II.

There is no question but that the burden of proof for the prosecution in a criminal case is that guilt must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368, 375 (1970). The standard is defined as:

> Such proof as precludes every reasonable hypothesis except that which it tends to support and which is wholly consistent with defendant's guilt and inconsistent with any other rational conclusion.

*Black's Law Dictionary* 1215 (6th ed. 1990). Substantial evidence, however, is defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.

*Id.* at 1428. Clearly, the substantial evidence standard is not adequate to support a finding of guilty in a criminal case.

### III.

The real question is whether "substantial credible evidence" is the standard which the judge actually applied, or whether it was merely a slip of the tongue. Concededly, there are strong arguments both ways.

First, this court could read between the lines, and determine that the judge was using the proper standard. At least one court has "independently applied the proper standard of proof." *Giles v. State*, 554 So. 2d 1073, 1089 (Ala. Crim. App. 1984), *aff'd in part, rev'd in part on other grounds sub nom Ex Parte Giles*, 554 So. 2d 1089 (1987). We recently addressed the issue where the argument was put forth that the wrong standard of proof was applied. In a disciplinary case which was subject to a recently mandated change in the burden of proof, but there was no statement by the ruling body as to what standard was applied, we nevertheless reviewed the record to see if it supported the findings and conclusions of the Disciplinary Board, using the proper burden. *Office of Disciplinary Counsel v. Rapp*, 70 Haw. 539, 777 P.2d 710 (1989). In that case there was no statement by the ruling body; the instant case provides this court with such a statement.

We find the ruling by this court in an earlier case to be the better rule to follow where such a statement is made. In *State v. Matsuda*, 50 Haw. 128, 432 P.2d 888 (1967), this court reversed the judgment where the trial judge found that the defendant "failed *to convince* the court that the defendant suffered a black out. . . ."

*Id.* at 128–29, 432 P.2d at 890. We held that defendant's burden of proof is merely to raise a reasonable doubt in the mind of the trial judge, not to convince him of his defense. *Id.* at 129, 432 P.2d at 890. We refused there to speculate as to what legal test the trial judge actually applied, taking the statement at face value.[1]

To argue that there is substantial evidence to convict is really arguing that the error was harmless. As the error claimed is of constitutional dimension, before it can be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 711 (1967) (followed by this court in *State v. Napeahi*, 57 Haw. 365, 373, 556 P.2d 569, 574 (1976)). The fact that we are divided convinces us that the standard has not been met.

Rule 23(c) of the Hawaii Rules of Penal Procedure (HRPP) dictates that in a bench trial the court need only make a general finding unless special findings are requested.

> In a case tried without a jury the court shall make a general finding and shall in addition, on request made at the time of the general finding, find such facts specially as are requested by the parties. Such special findings may be orally in open court or in writing at any time prior to sentence.

HRPP Rule 23(c).

As Rule 23(c) only requires that a general finding be made, the statement made by the judge leaves us confused as to what

---

[1] The dissent takes issue with the holding of *Matsuda* insofar as it suggests that defendant has any burden of proof. The criticism is well placed, but makes the ultimate holding of *Matsuda*, that the proper standard of proof must be applied, even more compelling in this case. We find *State v. Cannon*, 56 Haw. 161, 532 P.2d 391 (1975), cited in the dissent as an erosion of *Matsuda*, to be distinguishable in that the error complained of in *Cannon* was not of constitutional dimension, as it was not the final determination of guilt.

standard of proof was being applied. Since we are not convinced that the judge used the proper standard, that guilt must be proved beyond a reasonable doubt, we reverse for a new trial.

*Judd Scott* (*Theodore Y.H. Chinn* on the brief), Deputy Public Defenders, for defendant–appellant.

*Joseph W. Lee*, Deputy Prosecuting Attorney, for plaintiff–appellee.

## DISSENTING OPINION OF MOON, J.,
## IN WHICH WAKATSUKI, J., JOINS

I respectfully dissent. I do not agree that the trial court's comment, "sufficient substantial credible evidence," refers to the standard of proof applied. In my view, the comment described the nature of the evidence presented in support of the finding of "guilty." I believe the standard of beyond a reasonable doubt is incorporated within the term "guilty" and thus, I would hold that the trial court presumptively applied the correct standard. Moreover, even if I accept the majority's view that the standard was unclear, I believe that there is substantial evidence to support the ultimate finding of guilt when the proper standard is applied. Accordingly, I would affirm the conviction.

In this case, the trial court as the trier of fact was faced with weighing the evidence, judging the credibility of the witnesses, and determining the reliability of their testimony, especially in light of the conflicting stories by the victim, Brian Purugganan. At trial, Officer Olga Pinero testified that she responded to appellant's address on a reported domestic argument on September 6, 1990 at

a few minutes after 6:28 p.m. Upon her arrival, Pinero heard loud yelling and the sound of things being thrown around. Pinero knocked on appellant's door and Purugganan, appellant's boyfriend, answered. Pinero noticed that Purugganan appeared scared and that his head was bleeding. Pinero testified that Purugganan told him that appellant had hit him with the "VCR."

Officer Gerald Kam also responded to the scene. He testified that after he arrived he observed Purugganan holding the right top side of his head, where blood was coming down. He also noticed that Purugganan had scratches on his left shoulder and a cut on his upper lip. Kam testified that Purugganan appeared upset and excited. Upon questioning, Purugganan told Kam that appellant had thrown a video cassette tape, which hit his head. At Kam's request, Purugganan gave a written statement, which was admitted into evidence. It read:

> On Sept. 6, 1990 at 6:10 p.m. I had a[n] argument with my girlfriend Shonna Norton. I tried to control her, but she picked up a video cassette tape and threw it at my direction and it struck my right side of my head. Two minutes later I felt my head bleeding and a slight indentation in my scalp. I showed her the blood on my hand and said "look what you did."

At trial, Purugganan acknowledged that he and appellant had argued on the night in question. However, contrary to his written statement, he testified that when he tried to stop appellant from leaving their residence, he tripped and hit his head on a coffee table. Purugganan stated that he had wiped some of the blood from his head on appellant's clothes to show her what she had done. Purugganan testified that he told the police he did not want to press charges. He claimed that Officer Kam told him that the officers would not leave the premises until he had written out a statement, that Kam told him word for word what to write, and that the statement was not true.

Appellant also testified at trial. She admitted having had an argument with Purugganan, but denied hitting him with the video cassette tape. She stated that as she ran toward the front door, Purugganan attempted to stop her from leaving the residence when he tripped over a recliner.

After hearing the testimony and arguments of counsel, the court ruled (emphasis added):

> At this time after careful consideration of the evidence the Court does find that there is *sufficient substantial credible evidence to adjudge the Defendant guilty* of the offense of Abuse of a Household Member.
>
> . . . .
>
> Specifically the Court is relying on the past recollection recorded received into evidence as State's Exhibit 1 [Purugganan's written statement] — which at this time I will enter findings — provides the Court with what I believe is reliable information since it was recorded at or near the time of the offense alleged.
>
> That this statement was concluded at approximately 6:51 p.m. on the date in question, September 6 and executed by Brian Purugganan.
>
> Secondly, that you have not only one but two specific instances of an excited utterance — or in the alternative, a present sense impression, exception to the hearsay rule provided by Officer Pinero who at or about 6:28 p.m. heard — or was interviewing the complaining witness and received the verbal statement by the complaining witness Brian Purugganan that things had gotten out of hand and that his girlfriend hit him with a "VCR."
>
> Further, that at or about 6:30 p.m. within (indiscernible) . . . a fifteen minute time frame Officer Kam testified that he also heard an excited utterance by the complaining

witness that "his girlfriend" — that is Mr. Purugganan's girlfriend — "threw a video cassette at his head."

Both officers observed the demeanor of the complaining witness to be upset and also to have sustained a head wound that is bleeding from the head from a laceration described to be approximately one inch in length.

Further for the record, the Court has the testimony of Margo Low, the sister — now sister–in–law of the Defendant — who corroborates the version of the officers, that upon arriving on the scene Ms. Low observed that her brother appeared upset and bleeding from the head area.

Further for the record, the Court believes that there is sufficient credible evidence provided in the 252 [HPD statement form] as I've mentioned sufficient to convict the Defendant of — of the offense of Abuse.

. . . .

I also reject the version offered by Mr. Purugganan that for him to have supplied the truthful version of tripping over the recliner would not have endangered him in any way for him to have come clean with his version if in fact that had occurred.

However, I do consider that the versions or statements both verbal and written given on the day in question 6, September are more reliable and have a higher probative value to this Court.

I do discredit the live testimony on the stand today on the basis of the fact that he obviously is attempting to protect his now wife who he married two days ago.

The majority characterizes the court's initial statement, which included the phrase "sufficient substantial credible evidence to adjudge the defendant guilty," to be "its general finding." I agree. Such a general finding is permitted under Hawaii Rules of Penal

Procedure (HRPP) 23(c).[1]  In my view, "sufficient substantial credible evidence" referred to the quantum, quality, and credibility of the evidence relied upon by the court to support its finding of guilty.  I simply do not see the basis of the majority's confusion as to what standard of proof was being applied.

Under HRPP 23(c), there is no requirement that the trial judge specify the standard of proof because it is obvious that the standard of beyond a reasonable doubt is incorporated within the term "guilty."  In a criminal jury trial, the court instructs the jury that the standard of proof is beyond a reasonable doubt.  The verdict form submitted to the jury simply requires a finding of "guilty," if the jury so determines.  The verdict form does not include a statement of the standard of proof.  Thus, when a jury returns a finding of "guilty," there is a presumption that it applied the standard of beyond a reasonable doubt as instructed by the court.  There should be no difference when a case is tried without a jury because the same presumption applies to the finding of "guilty" by the trial judge.  In this case, if the trial judge had stated, "Based on the evidence, I find the defendant guilty," I am confident the majority would agree that the reference to the term "evidence," without any qualifiers, would not have created any confusion as to the  standard of proof applied since "beyond a reasonable doubt" is incorporated within the term "guilty."

The majority takes the position that using the adjective "substantial" to describe the evidence, which supports the guilty finding, in some way alters the standard of proof.  The majority reasons that "substantial evidence," as defined by Black's Law

---

[1] HRPP 23(c) provides (emphasis added):

In a case tried without a jury the court shall make *a general finding* and shall in addition, on request made at the time of the general finding, find such facts specially as are requested by the parties.  Such special findings may be orally in open court or in writing at any time prior to sentence.

Dictionary,[2] is "not adequate to support a finding of guilty in a criminal case." However, that definition is derived from *Marker v. Finch*, 322 F. Supp. 905, 910 (D.C. Del. 1971), a civil case involving an action for social security benefits and thus has no applicability to this case. On the other hand, in Black's Law Dictionary "substantial evidence," as applied in a criminal case, is defined as "evidence from which trier of fact reasonably could find issue in harmony therewith." *Black's Law Dictionary* 1428 (6th ed. 1990) (citing *Kansas City v. Stamper*, 528 S.W.2d 767, 768 (Mo. App. 1975)).

In the context of supporting the conclusion of guilt by the trier of fact, this court has defined "substantial evidence," that is consistent with Black's Law Dictionary's definition of "substantial evidence" as applied in criminal cases. In *State v. Lima*, 64 Haw. 470, 643 P.2d 536 (1982), this court stated:

> "On appeal, the test to ascertain the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact." Moreover, "[i]t matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence *so long as there is substantial evidence tending to support the requisite finding for conviction.*" " 'Substantial evidence' *as to every essential element of the crime charged is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a*

---

[2] As cited by the majority, "substantial evidence" means:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.

*Black's Law Dictionary* 1428 (6th ed. 1990).

*conclusion. . . . It is evidence which a reasonable mind might accept as adequate to support such a conclusion."*

*Id.* at 475, 643 P.2d at 539 (citations omitted, emphasis added). Thus, on the ultimate finding of guilt, the usual rule is that it must stand if it is supported by "substantial evidence." *Id.* at 475, 643 P.2d at 539.

Further, the majority does not comment on the import of the term "sufficient," which also modifies "evidence." "Sufficient evidence," as defined by Black's Law Dictionary, "is that which is satisfactory for the purpose; that amount of proof which ordinarily satisfies an unprejudiced mind, *beyond a reasonable doubt." Black's Law Dictionary* 1433 (6th ed. 1990) (emphasis added). Clearly, the trial judge in selecting the adjectives modifying "evidence" intended to leave no question that, as the trier of fact, she found that the evidence met the legal requirement necessary to support the finding of guilt, that is, beyond a reasonable doubt.

After a review of the whole record, I am perplexed as to how the trial court's accurate and legal description of the evidence supporting the finding of guilt, alters or confuses the criminal standard of proof applied.

The majority relies on *State v. Matsuda*, 50 Haw. 128, 432 P.2d 888 (1967), where, in a prosecution for negligent homicide, the trial court stated that the defendant had "failed to convince" the court that the cause of the accident was the "result of an unforeseeable sudden loss of consciousness." Explaining that the defendant's burden of proof was only to raise a reasonable doubt in the mind of the trier of fact, this court reversed the conviction because it was unclear whether the trial court had applied an erroneous standard. *Matsuda* is clearly distinguishable and inapplicable to the present case. The trial judge's language, in this case, describing the supporting evidence of guilt cannot be equated with

the trial judge's imposition of a burden of proof on defendant in *Matsuda* where none existed.[3]

Further, I believe the ruling of *Matsuda* has been largely eroded by a more recent decision of this court in *State v. Cannon*, 56 Haw. 161, 532 P.2d 391 (1975). *Cannon* involved a driving under the influence of intoxicating liquor case, where the trial court denied defendant's motion to acquit on the ground that there was "probable cause" to believe that the defendant had committed the offense charged. This court noted in *Cannon* that the standard to be applied in denying a motion to acquit is whether there is "sufficient evidence to support a prima facie case." 56 Haw. at 163, 532 P.2d at 394. In passing upon the defendant's motion for acquittal, the trial court, therefore, applied an erroneous standard of law. Nonetheless, we held that the error was not reversible because when we applied the proper standard of law, we determined that the evidence presented by the prosecution was sufficient to establish a prima facie case. *Id.* at 164, 532 P.2d at 394.

Here, the trial court, in addition to its general finding, made detailed, specific, and complete findings supporting its conclusion that appellant was guilty. Thus, I would hold that the trial court presumptively applied the correct standard of proof and that the trial judge's legal description of the supporting evidence was wholly appropriate. Alternatively, even if I accept the majority's view that the standard was unclear, I believe that when the proper standard is applied, there is substantial evidence to support the ultimate finding of guilt.

Accordingly, I would affirm the conviction.

---

[3] I believe that this court was in error in *Matsuda* by suggesting that any burden of proof should be imposed on the defendant. *See State v. Simpson*, 64 Haw. 363, 371, 641 P.2d 320, 325 (1982) ("a criminal defendant is not compelled to present a defense. The defendant may stand pat for the State has the burden of proving each and every element of the crime charged beyond a reasonable doubt in order to sustain a criminal conviction." (Citations omitted.)).