**STATE OF HAWAII**, Respondent–Appellee, v. **CAROL APLACA**, Petitioner–Appellant

NO. 15402

(CASE NO. CTP1 OF 2/19/91)

OCTOBER 6, 1992

MOON, ACTING C.J., KLEIN, AND
LEVINSON, JJ., CIRCUIT JUDGE MILKS,
IN PLACE OF LUM, C.J., RECUSED, AND
RETIRED JUSTICE HAYASHI, IN PLACE OF
ASSOCIATE JUSTICE WAKATSUKI, DECEASED

## OPINION OF THE COURT BY MOON, J.

Petitioner–appellant Carol Aplaca (Aplaca) was convicted of one count of Assault in the Third Degree in violation of Hawaii Revised Statutes (HRS) § 707–712(1)(a) (1985). Subsequent to her conviction, she moved for a new trial based on ineffective assistance of counsel, which was denied.

On appeal, Aplaca maintained that the trial court applied the wrong standard of proof in adjudging her guilty and that she was denied her right to effective assistance of counsel. The ICA affirmed Aplaca's conviction by memorandum opinion,[1] concluding the trial court applied the correct standard of proof and did not abuse its discretion in denying her motion for a new trial. This court granted Aplaca's application for a writ of certiorari to review the ICA's holdings in its memorandum opinion.

We conclude that the ICA correctly determined that the trial court's statement, "finding for the complaining witness," amounted to its assessment of credibility between the complaining witness and Aplaca and was not an application of the civil standard of proof. However, we

---

[1] *See* **State v. Aplaca**, No. 15402 (Haw. App. Apr. 29, 1992) (mem.).

find that Aplaca's trial counsel failed to perform a pretrial investigation of potential credibility witnesses and failed to make an offer of proof regarding one witness's testimony during trial. These omissions and errors resulted in the substantial impairment of a potentially meritorious defense for Aplaca. We therefore conclude that Aplaca was denied effective assistance of counsel. Accordingly, we affirm in part, reverse in part, and remand for a new trial.

## I. **FACTS**

Aplaca was an adult corrections officer (ACO) at the Waiawa Correctional Facility (Waiawa). On November 12, 1989, an incident occurred between Aplaca and another ACO, Michelle Viernes (Viernes), which resulted in the assault charge against Aplaca. She pled not guilty and waived trial by jury. At trial, only two witnesses testified — Viernes, the complaining witness on behalf of the State, and Aplaca. Hence, the outcome of the trial hinged on the credibility of the witnesses.

Viernes testified that after finishing work on the day of the incident, she was proceeding to her car when she noticed some cleaning materials which had been left on the ground. She placed them in a bucket, re–entered the correctional facility, and began walking down a hallway leading to central control. The hallway was approximately four feet wide, but a couch had been placed in the hallway which narrowed its width, thus making it difficult for two persons to pass in front of the couch at the same time.

According to Viernes, she had just passed the couch when Aplaca, who was coming down the hallway from the opposite direction, rammed the left side of Viernes's body, causing her (Viernes) to fall backwards and strike the

armrest on the couch. After she stood up, Viernes testified that she asked Aplaca, "What the hell are you doing?" Aplaca replied, "What are you going to do about it? Tell me, what are you going to do about it?" Viernes stated that, as a result of the incident, she sustained a bruise to her left elbow area.

Viernes also testified that prior to this incident, she did not harbor any animosity against Aplaca. However, Viernes believed that Aplaca maintained animosity against her because she (Viernes) was dating Sergeant Hoomana, a sergeant at the correctional facility whom Aplaca had previously dated.

Aplaca's trial counsel attempted to cross–examine Viernes concerning an inconsistent statement she had made to ACO Gillespie, who had investigated the incident. However, because he failed to make an offer of proof regarding relevancy, the trial court denied the use of Viernes's prior inconsistent statement.

As the sole defense witness, Aplaca testified that she had left central control to go to the third watch post. She stated she was walking down the hallway and had just reached the end of the couch, which was closest to the door, when Viernes entered through the door. According to Aplaca, Viernes closed the door and began walking in a fast pace towards her. Aplaca testified that although she saw Viernes coming, she could not step aside because there was no room, and also because of the quickness of Viernes's walk. Both women collided. Aplaca stated that at the time of the impact, Viernes had not yet reached the couch, and although the impact was hard, Viernes did not fall.

Immediately following the collision, Aplaca indicated that Viernes began yelling, saying that she was tired of Aplaca's "kid games or something." Aplaca then asked

Viernes what they were going to do about the problem. Aplaca denied hitting Viernes intentionally. She also stated that, at the time of the incident, she did not know that Viernes was dating Sergeant Hoomana.

Aplaca's trial counsel attempted to call Captain Frances Watkins (Watkins), Chief of Security at Waiawa; however, the trial court refused to allow Watkins to testify because counsel failed to make an offer of proof as to her proposed testimony.

Subsequently, the trial court found Aplaca guilty as charged. However, after pronouncing Aplaca guilty, the court made comments regarding the testimony of Viernes and Aplaca, the only two witnesses who testified at trial, and then stated, "the [c]ourt, at this time, has no alternative but to *find for the complaining witness.*" (Emphasis added.)

After the trial, Aplaca's trial counsel withdrew and Earle A. Partington (Partington) substituted as counsel. Aplaca then filed a motion for new trial on the ground that she was denied her right to effective assistance of trial counsel. Essentially, Aplaca contended that her trial attorney failed to call certain witnesses to testify on her behalf and failed to make an offer of proof regarding Watkins's testimony. At the hearing on the motion for new trial, Aplaca's trial counsel was the only witness called to testify. The trial court denied her motion for a new trial, stating:

> Based upon the facts that the [c]ourt heard today as to additional information witnesses that could've been called this information was available to [trial counsel] and Miss Aplaca. What prompted [trial counsel] and Miss Aplaca not to call those witnesses or give an answer to the

[c]ourt as to why a particular witness was called without giving any offer of proof, I have no way of determining the reason may be is trial strategy.

Based upon the foregoing there is nothing in this hearing before me to give rise that there is ineffective [assistance] of counsel that will cause me to grant a new trial.

Aplaca was subsequently sentenced to one year probation, thirty hours of community service, and ordered to make restitution in the amount of $565. Her sentence was stayed pending appeal.

On appeal, the ICA affirmed Aplaca's conviction finding that the trial court's statement, "finding for the complaining witness," was not an expression of the standard of proof applied by the trial court, but rather an assessment of the credibility of the witnesses. The ICA concluded that Aplaca was not denied ineffective assistance of counsel because the unproffered testimony of potential defense witnesses would not have shed any light on the sole defense of lack of criminal intent.

We granted certiorari to review Aplaca's contentions that the ICA erred in affirming her conviction.

## II. **STANDARD OF PROOF**

The standard of proof in a criminal case is well–settled. The prosecution must prove the defendant guilty beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970); *State v. Silva*, 67 Haw. 581, 587–88, 698 P.2d 293, 298 (1985). Additionally, in a criminal case tried without a jury in Hawaii, the trial court may make general findings.

In a case tried without a jury the court shall make a general finding and shall in addition, on request

made at the time of the general finding, find such facts specially as are requested by the parties. Such special findings may be orally in open court or in writing at any time prior to sentence.

Hawaii Rule of Penal Procedure (HRPP) 23(c).

In finding Aplaca guilty, the trial court stated:

THAT based upon the testimony of the complainant, Miss Michelle Viernes and based upon the testimony of Miss Carol Aplaca, the [c]ourt, at this time, based upon the direct evidence and circumstantial evidence through the photographs and testimony as well as other evidence that is adduced at this particular hearing, [c]ourt, at this time, will find the defendant guilty as charged of Assault in the Third Degree.

The [c]ourt, at this time, will rely on the credibility of the witness in this case. *The testimony of the witness is much more credible than that of the defendant*; that the defendant did recklessly approach the witness Viernes in a method and manner by which she approached the complaining witness.

In view of the narrowness of the hallway; in view of the fact that the defendant saw the witness coming in through the back door and her demeanor on the witness stand, *the [c]ourt, at this time, has no alternative but to find for the complaining witness.*

The [c]ourt, at this time, adjudges the defendant guilty as charged.

(Emphasis added.)

Aplaca argues that the trial court's reference to finding Viernes more credible than she indicates the court's

confusion in applying "a balancing test," which is proper in a civil case, but inappropriate in a criminal case where the presumption of innocence is applicable. Aplaca, relying on this court's majority opinion in *State v. Norton*, 72 Haw. 296, 815 P.2d 1025 (1991), contends that the ICA erred in failing to apply this court's mandate in *Norton* that reversal is required when it is unclear what standard of proof the trial court applied. Aplaca argues that

> [t]his court has just decided that it is reversible error for a judge, in a bench trial, to make a central finding that "there is substantial credible evidence" to convict instead of finding proof beyond a reasonable doubt. *State v. Norton*, [72 Haw. 296, 815 P.2d 1025 (1991)]. The court found that "[c]learly, the substantial evidence standard is not adequate to support a finding of guilty in a criminal case. [*Id.* at 298, 815 P.2d at 1026.] Because the record was unclear as to what standard of proof was applied reversal was mandated.
>
> The instant case is more egregious than *Norton* in that it seems clear that not only was the civil standard of preponderance of the evidence applied, but the court also failed to apply the presumption of innocence. Reversal is mandated here.

Our review of *Norton*, in relation to Aplaca's argument that the trial court's statements here were ambiguous, now leads us to the conclusion that *Norton* was decided incorrectly. In *Norton*, the defendant was convicted of abuse of a family household member. 72 Haw. at 296, 815 P.2d at 1026. In so doing, the trial court, as the finder of fact, assessed the credibility of the witnesses and

weighed the evidence presented at trial. In its general findings, the trial court stated:

> At this time after careful consideration of the evidence the [c]ourt does find that there is *sufficient substantial credible evidence to adjudge the Defendant guilty* of the offense of Abuse of a Household member.

*Id.* at 302, 815 P.2d at 1028 (emphasis added). The issue presented before this court was whether the trial court's ruling demonstrated its use of an erroneous standard of proof in a criminal case. In remanding the case for new trial, the majority stated:

> As [HRPP] Rule 23(c) only requires that a general finding be made, the statement made by the judge leaves us confused as to what standard of proof was being applied. Since we are not convinced that the judge used the proper standard, that guilt must be proved beyond a reasonable doubt, we reverse for a new trial.

*Id.* at 299–300, 815 P.2d at 1027.

On second look, we conclude that the trial court's statement was neither ambiguous nor an expression of the standard of proof it applied in finding the defendant guilty. Rather, the terms "sufficient," "substantial," and "credible" merely modified the type and nature of "evidence" presented during the trial to support guilt beyond a reasonable doubt. "Sufficient evidence" means "that which is satisfactory for the purpose; that amount of proof which ordinarily satisfies an unprejudiced mind, beyond a reasonable doubt." BLACK'S LAW DICTIONARY 1433 (6th ed. 1990). We have also stated that " '[s]ubstantial evidence' as to every essential element of the crime charged is credible evidence which is of sufficient quality

and probative value to enable a man of reasonable caution to reach a conclusion. . . . It is evidence which a reasonable mind might accept as adequate to support such a conclusion." *State v. Lima*, 64 Haw. 470, 475, 643 P.2d 536, 539 (1982) (citations omitted); *see also* *State v. Batson*, 73 Haw. 236, 248–49, 831 P.2d 924, 931 (1992).

By using these terms, the trial court in *Norton* was in effect stating generally, in accordance with HRPP 23(c), that it found the evidence supported the defendant's guilt beyond a reasonable doubt. Furthermore, after making this statement, the trial court in great detail set forth the substantial credible evidence supporting the standard of beyond a reasonable doubt, such evidence which the majority failed to mention in its opinion. *Norton*, 72 Haw. at 302–03, 815 P.2d at 1028–29.

The circumstances in *Norton* are similar to those here, namely that the trial court, as the finder of fact, determined the credibility of the witnesses and weighed the evidence. It is within this limited context that the trial court in *Norton* and the trial court in this case commented on the nature of the evidence, never explicitly or impliedly mentioning a standard of proof.

During a criminal bench trial, trial courts are regularly called upon to consider the credibility of witnesses and weigh the evidence. We must give due deference to their ability to separate a determination of credibility and weighing of the evidence from the application of the proper standard of proof — beyond a reasonable doubt. Because there were no eyewitnesses to the incident other than Viernes and Aplaca, a determination of whether Aplaca assaulted Viernes hinged primarily on their credibility. After reviewing the testimony, we believe that it is within this limited credibility determination that the trial

court meant it had "no alternative but to find for the complaining witness." *See* **Lono v. State**, 63 Haw. 470, 473, 629 P.2d 630, 633 (1981) ("[i]t is for the trial judge as factfinder to assess credibility of witnesses, including defendants, and to resolve all questions of fact; the factfinder may accept or reject any witness' testimony in whole or in part").

We hold that where, as here and in *Norton*, the trial court did not refer to any standard of proof, but merely commented on the nature of the evidence in support of the finding of guilt, a presumption arises that it applied the correct standard. Accordingly, we hereby overrule *Norton*. Moreover, because the trial court in this case did not articulate a standard of proof and only stated that it "adjudges the defendant guilty as charged," we presume that it applied the correct standard.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

We next turn to Aplaca's contention that she was denied her right to the effective assistance of counsel, guaranteed by article I, § 14 of the Hawaii State Constitution and the sixth amendment to the United States Constitution, because trial counsel: 1) failed to conduct an investigation of witnesses she had identified and who were made known through discovery; and 2) failed to make an offer of proof during trial concerning the testimony of Captain Watkins.

When the denial of the right to effective assistance of counsel is raised, the question is: "When viewed as a whole, [was] the assistance provided [to the defendant] 'within the range of competence demanded of attorneys in criminal cases[?]' " **State v. Smith**, 68 Haw. 304, 309, 712 P.2d 496, 500 (1986) (citations omitted). The defendant

has the burden of establishing ineffective assistance of counsel and must meet the following two–part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.[2] *Id.*; *accord State v. Morishige*, 65 Haw. 354, 369, 652 P.2d 1119, 1130 (1982); *State v. Antone*, 62 Haw. 346, 348–49, 615 P.2d 101, 104 (1980); *Stough v. State*, 62 Haw. 620, 623, 618 P.2d 301, 304 (1980). This court will not judge the assistance provided the defendant ineffective solely by hindsight. *Smith*, 68 Haw. at 309, 712 P.2d at 500. A defendant who meets the two–prong test has proven the "denial of assistance 'within the range of competence demanded of attorneys in criminal cases.' " *Antone*, 62 Haw. at 349, 615 P.2d at 104.

## A. Errors or Omissions by Trial Counsel

Aplaca contends that her trial counsel failed to conduct an investigation of a list of witnesses she provided as

---

[2] As stated previously, Aplaca asserts her ineffective assistance of counsel claim under both the Hawaii and United States Constitutions. We have stated that the test for measuring ineffective assistance of counsel which this court adopted in *Antone*, 62 Haw. at 348–49, 615 P.2d at 104, differs from the federal standard enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith*, 68 Haw. at 310 n.7, 712 P.2d at 500 n.7 ("under the prevailing federal standard a defendant's claim of ineffective assistance is upheld only if he shows 'that counsel's representation fell below an objective standard of reasonableness' and 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (Citation omitted.)) Because the *Strickland* test has been criticized as being unduly difficult for a defendant to meet, we continue to follow the standard first enunciated in *Antone* because under Hawaii's Constitution, defendants are clearly afforded greater protection of their right to effective assistance of counsel.

well as witnesses that were made known through the discovery material he received. Moreover, counsel failed to ascertain that full discovery had not been provided by the State.

In support of her motion for new trial, Aplaca submitted affidavits from:

1) Captain Watkins, which indicated that Aplaca's trial counsel never contacted her prior to trial, although she did speak with him briefly on the day of trial; that as the supervisor of both Aplaca and Viernes, Watkins was familiar with them and would have testified that Aplaca was a truthful and peaceable person who should be believed under oath;

2) ACO Gillespie, who conducted an investigation of the incident for the Department of Corrections, tape recorded an interview with Viernes about the incident, and made a report wherein he concluded that no assault had taken place;

3) ACO Ueda and Waiawa administrator Clayton Frank, stating that if called to testify, they would have indicated that Viernes was not a truthful person, even if she were under oath;

4) Aplaca, which indicated that she hired counsel approximately six months before trial and asked him to investigate the case by contacting Captain Watkins, who would testify as a character witness for her, and ACO Gillespie, who had conducted an investigation of Viernes's complaint. She also told her attorney about other potential witnesses, including ACO Ueda; and

5) Partington, Aplaca's current attorney, who
stated that his investigation revealed that
full discovery had not been provided by the
State, namely, a three–page handwritten
statement by Viernes, which he obtained
from ACO Gillespie's report, but which had
not been furnished to trial counsel, and two
microcassette tapes of Viernes's interview
wherein Viernes indicated that she was walk-
ing *out* the door rather than *in* the door as she
testified at trial.

The copies of Gillespie's report, which had been provided
to Aplaca's trial counsel by the Attorney General's Office,
were also submitted in support of her motion. These mate-
rials included, *inter alia*, information that Aplaca had
passed a polygraph test and that ACO Gillespie's investi-
gation indicated that Aplaca did not assault Viernes.
Additionally, copies of the materials discovered by Par-
tington, including the transcribed statement of Viernes,
were also submitted in support of Aplaca's motion.

At the hearing on the motion for new trial, trial coun-
sel admitted that Aplaca informed him several months
prior to trial of the potential witnesses and their antici-
pated testimony. He also stated that he did not contact
any of them and had never conducted an investigation of
the materials he received from the Attorney General's
Office. He did speak with Captain Watkins, but admitted
this occurred on the day of trial and that it was brief, "only
small talk, really nothing in depth."

Significantly, trial counsel stated:

Yeah, there are some things that I later found out
that I didn't obtain. There are some tapes of
Viernes made by Gillespie which are materially

different from her testimony in court. Uh, I that
had I done further investigation on that that
would've been material to the defendant's case.
There was other activity by the complainant her-
self in terms of filing complaints. . . .

* * *

I think that if I had looked at the material
more carefully there are things in there that I
should've investigated into. I should've conducted
a more thorough investigation to the A.C.O.s and
other witnesses that were related to the case and
mentioned in the material that was subpoenaed
from the correctional facility. I should've talked to
Gillespie in much more detail because Gillespie
had some very important information that
would've helped the case.

"A primary requirement is that counsel must 'conduct
careful factual and legal investigations and inquiries with
a view to developing matters of defense in order that he
may make informed decisions on his client's behalf;' . . .
both at pretrial proceedings . . . and at trial." *State v.*
*Kahalewai*, 54 Haw. 28, 30–31, 501 P.2d 977, 979–80
(1972) (citations omitted). Aplaca's trial counsel conceded
that he made an error in not investigating the case other
than subpoenaing materials from the facility, and
acknowledged that he should have done more to empha-
size the credibility issues involved in the case.

We reiterate our belief that "[t]he decision whether to
call witnesses in a criminal trial is normally a matter
within the judgment of counsel and, accordingly, will
rarely be second–guessed by judicial hindsight." *State v.*
*Onishi*, 64 Haw. 62, 64, 636 P.2d 742, 744 (1981); *accord*
*Thompson v. Yuen*, 63 Haw. 186, 190, 623 P.2d 881, 884

(1981); *State v. El'Ayache*, 62 Haw. 646, 649, 618 P.2d 1142, 1144 (1980); *State v. McNulty*, 60 Haw. 259, 270, 588 P.2d 438, 446 (1978), *cert. denied*, 441 U.S. 961 (1979). Nonetheless, absent here is a foundational factual predicate upon which an informed decision whether to call a witness to testify must be based. We agree with the Supreme Court of Utah, which stated:

> If counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the "wide range of reasonable professional assistance." This is because a decision not to investigate cannot be considered a tactical decision. It is only after an adequate inquiry has been made that counsel can make a reasonable decision to call or not to call particular witnesses for tactical reasons.

*State v. Templin*, 805 P.2d 182, 188 (Utah 1990) (footnote omitted). Thus, the decision not to conduct a pretrial investigation of prospective defense witnesses cannot be classified as a tactical decision or trial strategy.

Although effective counsel does not mean errorless counsel, we believe trial counsel's assistance fell "below the level of ordinary competence demanded of lawyers in criminal cases" and reflected his lack of skill, judgment or diligence. *Kahalewai*, 54 Haw. at 30, 32, 501 P.2d at 980.

Finally, when Aplaca's trial counsel called Captain Watkins as a witness, the State objected and requested an offer of proof. Trial counsel's failure to make an offer of proof further demonstrated his lack of skill and judgment.[3] Furthermore, his reasoning for not making an

---

[3] The colloquy at trial was as follows:

[Trial counsel]: I'd like to call Captain Francis.

offer of proof does not, as a matter of law, constitute trial strategy or a valid on–the–spot strategic choice. As trial counsel testified, "well, quite frankly, I didn't want to upset the judge. That's one of the reasons."

Based on these errors and omissions, we find that Aplaca has met the first part of the *Antone* test.

## B. Substantial Impairment of a Meritorious Defense

Our review of the record leads us to believe that if Aplaca's trial counsel had investigated the potential defense witnesses and reviewed the materials he received during discovery, he would have realized the value of such witnesses to Aplaca's defense. With Aplaca having admitted that she and Viernes collided, the focal point was whether such collision was intentional or reckless by Aplaca. Moreover, because there were no other witnesses to the incident, the outcome of the case depended on the credibility of Aplaca and Viernes.

We have stated that "[a]n accused has the right to give evidence of personal character traits associated with the basic nature of the offense with which he [or she] is charged as circumstantial evidence of his [or her] innocence." *State v. Rivera*, 62 Haw. 120, 126, 612 P.2d 526,

---

[Prosecutor]: Your Honor, State would ask for an offer of proof. There were no witnesses to this incident.

THE COURT: What's the purpose of that? Was that person present there at the time?

[Trial counsel]: No, Your Honor.

THE COURT: The [c]ourt, at this time, will disallow the use of the witness.

[Trial counsel]: I have nothing further, Your Honor.

531 (1980) (citing *State v. Faafiti*, 54 Haw. 637, 642, 513 P.2d 697, 701 (1973)); *accord State v. Rabe*, 5 Haw. App. 251, 263, 687 P.2d 554, 562 (Haw. App. 1984). Character evidence demonstrating that Aplaca was a peaceful and nonviolent person at the time or prior to the incident would have bolstered her credibility and related directly to whether she would have intentionally or recklessly hit another person. *See* Hawaii Rule of Evidence 404 (commentary) ("[t]he accused in a criminal case may offer evidence of a trait of good character pertinent to the issues in the case. . . . Examples would be character for peacefulness and non–violence in an assault case . . . ." (citation omitted)). Moreover, if trial counsel had reviewed the subpoenaed materials and interviewed witnesses such as ACO Ueda, he could have produced testimony that would have indicated that Viernes was not a truthful person. *See* Hawaii Rule of Evidence 608.

Although we, as an appellate court, cannot predict the exact effect these prospective witnesses would have had on the trial court's assessment of Viernes and Aplaca's credibility, we firmly believe that such testimony could have had a direct bearing on the ultimate outcome of the case. We therefore disagree with the ICA's conclusion that the unproffered testimony would not have cast any light on the sole defense in this case, that is, the lack of criminal intent. The materials and affidavits are manifestly adverse to the ICA's finding.

Having met the the second prong of the *Antone* test, we conclude that Aplaca was denied her right to effective assistance of counsel, and we therefore remand for a new trial. *See Antone*, 62 Haw. at 349, 615 P.2d at 105 (finding of ineffective assistance of counsel mandates reversal of defendant's conviction).

74

## IV. CONCLUSION

Based on the foregoing, we affirm the ICA's holding that the trial court applied the correct standard of proof, and, in so doing, we specifically overrule *State v. Norton*, 72 Haw. 296, 815 P.2d 1025 (1991). However, we also conclude that the trial court abused its discretion in denying Aplaca's motion for a new trial. *See State v. McNulty*, 60 Haw. 259, 268, 588 P.2d 438, 445 (1978), *cert. denied*, 441 U.S. 961 (1979). Accordingly, we reverse that portion of the ICA's memorandum opinion affirming the trial court's denial of Aplaca's motion for a new trial based on ineffective assistance of counsel, reverse her conviction, and remand for a new trial.

*Earle A. Partington* of Partington & Foley, for petitioner–appellant.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, for respondent–appellee.