STATE OF HAWAII, Plaintiff-Appellee, *v.* WILLIAM LIMA III, Defendant-Appellant

NO. 7571

(CRIMINAL NO. 52998)

APRIL 7, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY OGATA, J.

On July 24, 1979, following a trial by jury, Respondent-Defendant, William Lima III (hereinafter "respondent"), was convicted of Rape in the First Degree in violation of HRS § 707-730(1)(a)(i) (1976), in the Circuit Court of the First Circuit. On appeal, the Intermediate Court of Appeals determined that the jury verdict of guilt was not supported by substantial evidence; hence, respondent's conviction was reversed in a decision filed by the Court on March 11, 1981. On March 31, 1981, we granted certiorari to review the sufficiency question. Upon careful review of the record, we are compelled to reverse the judgment of the Intermediate Court.

I.

The charge of rape in the first degree levelled against respondent arose from an incident occurring on April 1, 1979. On that day, the complainant, a fourteen-year old female (hereinafter "complainant"), was visiting a friend in Hawaii Kai. She had planned to return to her home in Kuliouou by bus. At approximately four o'clock that afternoon, however, the complainant inadvertently met respondent. They were acquainted since respondent had once been married to the complainant's first cousin.

During the course of their conversation, respondent told the complainant that he was on his way to visit his ex-wife, the complainant's first cousin, who happened to live next door to the complainant in Kuliouou. Since respondent was going there, the complainant asked him for a ride home.

Enroute to Kuliouou, respondent asked the complainant

whether she would like to go with him to steal some marijuana plants. She agreed but cautioned respondent that she had to be home by 5:00 p.m. Thereafter, they proceeded to St. Louis Park, where respondent claimed the plants were being grown.

Once there, upon leaving the car, respondent told the complainant to bring her towel so that they could conceal the marijuana plants. They walked through the picnic area, past various parties of park visitors, and up a wooded hiking trail. After walking approximately 300 yards up the trail, they left the trail and stopped at a flat clearing in the trees. This spot was down a steep incline from the trail and was surrounded by trees and low shrubbery. For the most part, the clearing was unobservable from the established hiking trail. At this point, respondent and the complainant were alone.

Respondent told the complainant to sit down and to be quiet, claiming he heard someone by the plants. After the complainant complied with this request, respondent sat down beside her. They shared some chewing gum, after which respondent put his hand on the complainant's back and inquired about the writing on her shirt. He then grabbed her left shoulder with his left hand and pinned her down. He placed his right hand on her breasts. She asked him to remove his hand. He told her to "shut up". He ran his hand down the side of her body and unbuttoned and removed her shorts. He released her momentarily to remove his own trousers. The complainant told him to stop because she was presently having her menstrual period. He did not respond but merely removed her tampon and completed the sexual intercourse.

At trial, the complainant testified that throughout these events she was crying and repeatedly told respondent, "Willie, why are you doing this to me, you're my cousin?" To this, respondent's only response was telling her to "shut up". The complainant also testified that during the alleged attack, she had tried, in vain, to push respondent off of her. The reason, she stated, that she did not resist to a greater degree was that she had been afraid.

After intercourse, respondent, who had been perspiring heavily, wiped himself with his shirt which he later discarded.[1] The com-

---

[1] Respondent's shirt, as well as a discarded gum wrapper and the complainant's tampon, was recovered at the scene of the alleged rape by police officers on April 3, 1979.

plainant also cleaned herself of semen and perspiration with her towel. They dressed and returned to the car. Respondent then drove the complainant within a block of her home and let her out.

On April 3, 1979, at the urging of her friends, the complainant went to a sex abuse treatment center. The medical examination revealed that while the complainant complained of tenderness in the upper arms, no physical trauma was evident on any part of her body. She did not sustain any bruises, abrasions, or lacerations from the alleged attacks. .

Later that day, the police were notified and respondent was subsequently arrested. On June 5, 1979, respondent was indicted by the grand jury for the first degree rape of the complainant. A jury trial was held on June 24, 1979. During the trial, respondent moved the court, at the end of the prosecution's case, again at the end of his case, and after the jury had returned its verdict, for judgment of acquittal. These motions were denied. Consequently, respondent was found guilty as charged.

On October 2, 1979, respondent appealed his conviction. He argued, in the Intermediate Court, that the trial court's denial to grant his motions for judgment of acquittal was error because there had not been substantial evidence adduced at trial to show he had forcibly compelled the complainant to engage in sexual intercourse.[2] The Intermediate Court, in reversing respondent's conviction, agreed. The court found that essential to the State's case is a

---

[2] As a preliminary matter, the State here argues that the applicable standard of review is not that urged by respondent and as utilized by the Intermediate Court, *i.e.,* the "substantial evidence" test. *See* State v. Summers, 62 Haw. 325, 331-332, 614 P.2d 925, 930 (1980). The State points out that respondent in his opening brief to the Intermediate Court assigns as the basis of his appeal the failure of the trial court to grant his motions for judgment of acquittal. As the State correctly claims, upon appeal from a denial of a motion for judgment of acquittal, the test is "whether, upon the evidence viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." State v. Brighter, 62 Haw. 25, 31, 608 P.2d 855, 859 (1980). As the State also correctly points out, the test applied by the Intermediate Court is one which this Court has time and again used for cases challenging the sufficiency of the evidence supporting the verdict.

However, in reviewing the briefs submitted, we are satisfied that respondent is challenging the sufficiency of the evidence to support the verdict of guilt. As such, we find no merit in the State's initial argument.

showing, by proof beyond a reasonable doubt, that sexual inter-
course was entered into by forcible compulsion. The court further
found that under our statutory scheme, forcible compulsion could
be proved in two alternative ways: (1) that respondent used physical
force to overcome the earnest resistance of the complainant, or (2)
that respondent threatened the complainant so as to place her in
fear of immediate death or serious physical injury thereby forcing
her to submit to the sexual intercourse. The court concluded that,
upon review of the evidence presented at trial, there had not been
substantial evidence adduced so as to support the finding as to this
issue.

## II.

It is well established, as a precept of constitutional as well as
statutory law, that an accused in a criminal case can only be convicted
upon proof by the prosecution of every element of the crime
charged beyond a reasonable doubt. *State v. Nuetzel,* 61 Haw. 531,
606 P.2d 920 (1980); *State v. Napeahi,* 57 Haw. 365, 556 P.2d 569
(1976); HRS § 701-114 (1976). Thus, in order to secure respondent's
conviction here, the State was bound to prove all the elements of the
offense charged to this requisite degree of certainty. Among the
elements to be established for the offense of rape in the first degree
is the requirement that respondent intentionally engaged in sexual
intercourse, by forcible compulsion, with the complainant.[3]

At trial, by motions for judgment of acquittal, and on appeal to
the Intermediate Court, respondent has strenuously argued that the

---

[3] HRS § 707-730(1)(a)(i) (1976) reads:
§707-730 *Rape in the first degree.* (1) A male commits the offense of rape in the
first degree if:
(a) He intentionally engages in sexual intercourse, by forcible compulsion,
with a female and:
(i) The female is not, upon the occasion, his voluntary social com-
panion who had within the previous twelve months permitted him sexual
intercourse;.
We note that this section has been subsequently amended. The provision is now
phrased in sex-neutral terms, "thirty days" has been substituted for "twelve months",
"of the kind involved" has been added after the word "intercourse", and other minor
grammatical changes have been made.

State had failed to present sufficient evidence on the issue of forcible compulsion to establish its prima facie case.

"On appeal, the test to ascertain the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact." *State v. Summers, supra,* 62 Haw. at 331-332, 614 P.2d at 930. Moreover, "[i]t matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite finding for conviction." *Id.* at 332, 614 P.2d at 930; *State v. Hernandez,* 61 Haw. 475, 478, 605 P.2d 75, 77 (1980). " 'Substantial evidence' as to every essential element of the crime charged is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion. [Citation omitted.] It is evidence which a reasonable mind might accept as adequate to support such a conclusion." *State v. Naeole,* 62 Haw. 563, 565, 617 P.2d 820, 823 (1980).

Given this standard of review, and with due regard to the jury's right to determine credibility, weigh the evidence, and draw justifiable inferences from the evidence presented, we cannot agree with the argument advanced by respondent and the conclusion reached by the Intermediate Court that insufficient evidence had been presented to establish the element of "forcible compulsion" and that the jury's verdict is therefore unsupported.

For the purposes of our review, "forcible compulsion" is statutorily defined under HRS § 707-700(12) (1976) as meaning, "physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person. . . ."[4]

---

[4] HRS § 707-700(12) (1976) has also been subsequently amended and renumbered. The definition of "forcible compulsion", under HRS § 707-700(11) (Supp. 1981) currently reads:

"Forcible compulsion" means the use of or attempt to use one or more of the following to overcome a person:
    (a) A threat, express or implied, that places a person in fear of bodily injury to the individual or another person, or in fear that the person or another person will be kidnapped;
    (b) A dangerous instrument; or
    (c) Physical force.

Under this definition then, we initially determine whether substantial evidence had been adduced at trial to find that respondent had exerted physical force which overcame any earnest resistance by the complainant. We conclude that there is substantial evidence in the record to establish forcible compulsion in this regard.

"Earnest resistance", as we recognized, "is a relative term and whether or not the statutory requirement was satisfied must be measured by the circumstances surrounding the alleged assault." *State v. Jones*, 62 Haw. 572, 574, 617 P.2d 1214, 1217 (1980). We have, nonetheless, required a showing that there had been a "genuine physical effort on the part of the complainant to discourage and to prevent her assailant from accomplishing his intended purpose." *Id.* at 574, 617 P.2d at 1217. This does not mean, however, that the complainant must resist to the utmost extent possible. We long ago rejected that view. *See State v. Dixon*, 47 Haw. 444, 390 P.2d 759 (1964).[5] Instead, we believe a complainant must only exhibit a genuine physical effort to resist as judged by the circumstances of the particular case. Among the factors to be con-

---

[5] In *Dixon*, decided under our former rape provision, R.L.H. 1955, § 309-31, we dealt with the issue of whether it had been error for the trial court to refuse to give defendant's requested instruction that "there must be the most vehement exercise of every physical means or faculty within the woman's power to resist penetration and a persistence in such resistance until the offense is consummated." *Id.* at 450, 390 P.2d at 763.

Toward the resolution of this issue, we recognized that the crime of rape had been historically defined as being comprised of two competing actions, *i.e.*, force, whether physical or by menace, on the part of the assailant, and non-consent, as evidenced by the amount of resistance exhibited, by the victim. In showing non-consent, however, we noted the divergence of authority — on the one hand, cases where utmost resistance had been required, and on the other, cases which repudiated or modified this harsh approach. Observing that the trend in the law was toward an application of a flexible rule, we found that resistance is a relative matter. Hence, we concluded that where the complainant, an elderly five-foot, one hundred twelve-pound woman, alone in a deserted school building, bothered by a back ailment, had cut her assailant with a scissors, inflicted scratches on his body, sustained abrasions and broken ribs by the attack, had been confronted by a six-foot, one hundred sixty-five pound defendant, stark naked with a masked face, advancing tiptoed towards her with his arms menacingly raised, the jury had been amply justified in finding that she "did all that she thought was possible or that she was personally capable of doing to demonstrate her non-consent and resistance." *Id.* at 457, 390 P.2d at 767. To require the invocation of the utmost resistance rule, we stated, would have been "nothing short of travesty." *Id.* at 456, 390 P.2d at 767. Therefore, the refusal to give the requested instruction had not been error.

sidered are the relative strength of the parties, the age of the complainant, the complainant's mental and physical condition, and the nature and degree of the force used by the assailant. *State v. Jones, supra* at 574, 617 P.2d at 1217. We note these factors are not all inclusive. Rather, in our review of this issue, we must necessarily consider all relevant facts concerning the alleged attack.

The record reveals, largely through the uncontroverted testimony of the complainant, the following salient facts. The time of the alleged attack was late in the afternoon on a Sunday. The site, a secluded, relatively unobservable spot approximately 300 yards up a hiking trail. There were no bystanders nearby. The complainant, while voluntarily accompanying respondent to the park and up the trail, had been tricked into going on the pretext of a theft of marijuana plants. The complainant was a fourteen-year old female. Respondent was an adult male.[6] Throughout the alleged attack the complainant had been very afraid.[7] Respondent had initiated the

---

[6] We note that the State failed to establish for the record the age of respondent, as well as the physical appearance of both the complainant and respondent. However, it is clear that by the presence of both parties in the courtroom, the jury had opportunity to view their respective physical characteristics and draw justifiable inferences therefrom.

[7] On direct examination, the complainant testified as follows:
Q. Then what did he do?
A. And then he put his penis in my vagina.
Q. How long did he do that?
A. For around five minutes.
Q. And what happened?
A. And he kept pumping. And he started sweating and everything. And I kept telling him, "Willie, stop it. Why are you doing this to me?" He kept telling me to shut up.
Q. Did you tell him it was all right for him to do this?
A. No, not at all.
Q. Why did you let him do it?
A. I didn't let him do it. He forced it.
Q. Why didn't you stop him.
A. I couldn't, I was scared.
        *    *    *    *    *
Q. And tell the jury one more time how you felt about the whole thing.
A. I was so scared to death, so scared.
While we agree with the Intermediate Court that the State failed to establish that complainant had a reasonable fear of immediate death or serious physical injury to thereby satisfy the definition of "forcible compulsion" in the second instance, we do not believe that this means the element of fear should be disregarded in the examination of the totality of circumstances surrounding the alleged assault.

sexual contact by touching the complainant's breasts. She resisted by telling him to stop. He physically pinned her down and removed her clothing. He released her momentarily to take off his own trousers. As he was about to engage in sexual intercourse, the complainant told him to stop because she was in the midst of her menstrual period. He did not reply, but merely removed her tampon. He pinned her down with his body and completed sexual intercourse. Throughout this ordeal, the complainant cried and pleaded with respondent to stop. She physically tried to restrain him by attempting to push him off. She did not simply lie supine and unresisting while the respondent had his way with her.

From the foregoing facts, we cannot say, as a matter of law, that the complainant here did not exhibit a "genuine physical effort" to resist. We believe, from the record, that these facts are sufficient, when judged in the light most favorable to the State, and with due regard to the jury's right to draw justifiable inferences therefrom, to support the finding as to the issue of "forcible compulsion."

The Intermediate Court, in its conclusion that the complainant did not earnestly resist, finds critical the fact that the complainant did not struggle to a greater degree, did not cry out, or attempt to flee. However, as we recognized earlier, we do not believe that a complainant must do everything in her power to thwart the attempts of her assailant. We merely require, under the statute, that the State show that the complainant made a "genuine physical effort" to resist. We agree that the above-mentioned omissions may weigh heavily in the factual determination of the issue. However, we do not agree that in this particular case these omissions establish as a matter of law that the complainant did not earnestly resist.

Accordingly, we hold that upon a review of the record there had been substantial evidence adduced at trial to support the jury's verdict in this case. Therefore, the decision of the Intermediate Court is reversed and the judgment of conviction is hereby affirmed.

*Arthur E. Ross,* Deputy Prosecuting Attorney, for petitioner-appellee.

*G. Stephen Elisha,* Deputy Public Defender, for respondent-appellant.