Robert E. **HENRY**, Petitioner–Appellee,

v.

Wayne **ESTELLE**, Warden,
Respondent–Appellant.

No. 91–55691.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1991.

Decided May 18, 1993.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 19, 1994.

As Amended Sept. 30, 1994.

Everett B. Clary, O'Melveny & Myers, Los Angeles, CA, for petitioner-appellee.

David F. Glassman, Deputy Atty. Gen., Los Angeles, CA, for respondent-appellant.

Before: FLETCHER, D.W. NELSON, and BRUNETTI, Circuit Judges.

Per Curiam; Dissent by Judge BRUNETTI.

## ORDER AMENDING OPINION and DENYING PETITION FOR REHEARING and REHEARING EN BANC

The opinion filed at 993 F.2d 1423 is amended as follows:

[Editor's Note: Amendments incorporated for purposes of publication].

Except for the above amendments, the petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

The petition for rehearing en banc was circulated to the full court. An active judge of this court requested a vote as to

whether the case should be reheard en banc. Less than the required majority of the non-recused active judges voted to take the case en banc.

No further petitions for rehearing or rehearing en banc will be entertained. The mandate shall issue forthwith.

Judge Brunetti dissents from this order and files herewith a dissent to the amended opinion.

## OPINION

PER CURIAM:

This is an appeal from a grant of habeas corpus by the United States District Court for the Central District of California. Petitioner Robert Henry contends that he was denied due process at his trial for child molestation because evidence of an uncharged crime was erroneously admitted and then followed by a jury instruction emphasizing that same evidence. The district court found that Henry had exhausted his state remedies and that the testimony in question was so inflammatory as to infect the entire trial and preclude fundamental fairness. We affirm.

### Facts and Proceedings Below

Henry was tried for seven counts of child molestation before a jury in the Superior Court of California. He was charged with one count of molesting a boy named Andrew and six counts of molesting a boy named Michael. Henry was found guilty of the count involving Andrew, a mistrial was declared as to five of the counts and Henry was

acquitted of one count. He was sentenced to six years in prison.

The incident involving Andrew allegedly occurred when Andrew was attending St. Paul's Church and Day School and Henry was the rector of the church and dean of the school. Andrew could not remember if he was in kindergarten or first grade at the time of the incident. He was ten years old and in fourth grade at the time of his testimony.

On the day in question, Andrew was apparently outside Henry's office waiting for his parents, who were late, to pick him up. Andrew testified that Henry called Andrew into his office alone and closed the door behind them. Henry allegedly told Andrew to lie on the couch and pull down his pants. Andrew stated that Henry then touched him on the penis for about three minutes. Andrew was then told to leave the office and wait for his parents.

Henry contends that molestation could not have occurred during this incident. Henry knew that Andrew's parents were late and could arrive at any moment. Furthermore, the area outside the office was normally bustling with adults and children. There was a window in Henry's office that looked out onto walkways used by the children, and observers apparently could see through the drapes on this window.

At trial, Tomoko and Tobias Yeh, members of St. Paul's Episcopal Church and parents of children who attended the school, testified for the prosecution. In April 1987, Ms. Yeh was told by the wife of the police chief that Henry was believed to have molested Andrew. The Yehs confronted Henry, who allegedly stated that something had happened but that it had been misinterpreted, and denied molesting Andrew.

After the prosecution rested and the defense presented its evidence, the prosecution moved to reopen their case in chief to present the testimony of Thomas Hackett. Hackett was prepared to testify that almost twenty years earlier Hackett's eleven-year-old son told him that Henry had touched him. When Hackett confronted Henry with the allegation, Henry allegedly responded that he had been counseling Hackett's son for an emotional problem which caused him to grab himself when nervous, and that the son was mistaken about the touching.

The trial judge found that the exchange between Hackett and Henry resembled the meeting between the Yehs and Henry because it was a similar confrontation, with a similar denial and explanation. The judge ruled that when the defendant used the same excuse to explain his conduct on more than one occasion, his prior statements were admissible to prove the falsity of the explanation. Henry objected that the evidence had no probative value because there was no evidence to show that the prior explanation to Hackett had, in fact, been false. Henry also objected to the prejudice caused by the introduction of the testimony. The trial judge overruled these objections.

Hackett then testified that in 1969 his eleven-year-old son attended a church school, where Henry was rector of the church. His son informed him that he was touched by Henry, and Hackett confronted Henry with the information. Henry responded that he had been counseling the son on a problem the son had regarding his grabbing himself when he was nervous. Henry did not indicate where the son was grabbing himself, but Hackett felt Henry's intimation was that the son was grabbing his penis. Hackett testified he then told Henry that, according to his son's story, it sounded more like molestation. Henry responded that his son was "mistaken or misunderstood, words to that effect."

The trial judge attempted to minimize the danger of the testimony by giving a cautionary jury instruction, part of which read:

> Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show that the defendant's present out-of-court explanation, if you find that it was made, of his conduct, is not genuine.
>
> When a defendant uses a similar explanation of his conduct on more than one occasion, his prior statements may, if found to have been made, show that his present explanation, if found to have been made, is not genuine.

Henry appealed his conviction to the California Court of Appeal. He argued that the introduction of the testimony was contrary to California law and that its introduction resulted in a "miscarriage of justice" under the California Constitution, article VI, section 13. The Court of Appeal unanimously ruled that the admission of the testimony was error because Hackett's testimony was not probative of any material issue unless the jury improperly assumed the earlier accusation was false, and that the instruction, instead of alleviating the risk of error, virtually required the forbidden inference that Henry was a person of bad character or a person with a disposition to commit bad acts. However, the majority ruled that the error was not prejudicial because it was "not reasonably probable a different result would have been reached in the absence of the admission of this evidence."

After rehearing was denied and his petition for review to the California Supreme Court was rejected, Henry filed a habeas corpus petition in the United States District Court for the Central District of California. The district court granted the petition, adopting the United States Magistrate's finding that Henry had exhausted his state remedies and that the error violated Henry's due process right to receive a fundamentally fair trial.

### Standard of Review

We review de novo the district court's decision on a habeas corpus petition. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir. 1991).

### Discussion

1. *Exhaustion of state remedies.*

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir.1991). Principles of comity and deference underlie the exhaustion requirement, which assures that the state courts will have the first " 'opportunity to pass upon and correct' alleged violations of" state prisoners' federal rights. *Wilwording*

*v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408–09, 30 L.Ed.2d 418 (1971) (quoting *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (1963)).

■ To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 277–78, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971). The purpose of this "fair presentation" requirement is to "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (quoting *Picard*, 404 U.S. at 276–77, 92 S.Ct. at 513). We have held that a federal claim "is fairly presented if the petitioner has described the operative facts and legal theory upon which his claim is based." *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir.1986).

■ There is no doubt that Henry presented the "operative facts" to the California court. The question is whether he presented the "legal theory." Henry's federal habeas claim is that the erroneous admission of evidence at his state criminal trial, followed by the jury instruction, violated his federal constitutional right to due process and was so prejudicial as to require reversal of the conviction. In his direct appeal in state court, Henry did not label his claim a federal due process violation; he argued rather that Hackett's testimony was erroneously admitted because irrelevant and inflammatory, and that its admission resulted in a "miscarriage of justice" under the California Constitution. Cal. Const. art. VI, § 13. However, to state a federal due process claim it is not necessary to invoke "the talismanic phrase 'due process of law' " or cite "book and verse on the federal constitution;" petitioner need only make "essentially the same arguments" before the state and federal courts to exhaust a claim. *Tamapua*, 796 F.2d at 262–63. Thus, under *Picard* and *Anderson*, exhaustion requires only that petitioner present "the substance of the federal claim" in state court. *Id.* at 262. We find that Henry has done so, regarding both his argument that the erroneous admission of the testimony and

the instructional error were a violation of his federal due process right and his argument that the error was so prejudicial as to warrant reversal.

As to the first point, it is well established that denial of due process in a state criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice. [The court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). Henry's federal due process claim is that the admission of Hackett's testimony, along with the instructions concerning it, deprived him of a fair trial. He argues that Hackett's testimony was not probative of any material issue in his case unless the jury assumed a fact about which it had heard no testimony: that Hackett's son's accusation was true. He further argues that the jury instructions encouraged the jury to make this impermissible, highly prejudicial assumption. His claim is thus that "there are *no* permissible inferences the jury may draw" from Hackett's testimony, and that it is "of such [inflammatory] quality as necessarily prevents a fair trial." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir.1991); *see also Estelle v. McGuire*, 502 U.S. 62, ——, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991) (inflammatory evidence that is irrelevant may work a due process violation).

Henry made "essentially the same arguments," *Tamapua*, 796 F.2d at 262, in his opening brief to the California Court of Appeal. He claimed that Hackett's testimony was "not relevant—it had no tendency to prove or disprove any disputed fact that was of consequence to the determination of the action." He added that the jury instruction "compounded the error" because, in encouraging the jury to see Hackett's testimony as relevant, it "as much as said that defendant

had molested [Hackett's son] 20 years before." The Court of Appeal agreed, and wrote in its disposition that Hackett's testimony, while "inherently inflammatory," had "no probative value at all."

We reach the same conclusion as to the essential identity of Henry's state and federal arguments regarding the prejudicial effect of the error. Under California law, a miscarriage of justice is reversible only when "it is reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error." *Watson*, 299 P.2d at 254. The federal standard, recently set forth by the Supreme Court in *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), is phrased somewhat differently, but is essentially the same test; the Supreme Court held that in reviewing a collateral challenge based on a "trial-type" constitutional error, a federal court will not reverse the conviction unless the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at ——, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

■ The errors that occurred at Henry's trial—the introduction of Hackett's testimony and the subsequent jury instruction—were clearly errors of the "trial type" because they "occurred during the presentation of the case to the jury". *Arizona v. Fulminante*, 499 U.S. 279, 307, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). Therefore, under the new *Brecht* harmless error standard, we must inquire whether the testimony had a "substantial and injurious effect or influence" on the verdict.[1] This standard is similar to the *Watson* standard used by California courts; under both tests, reversal is required if the error had a significant inculpatory impact. When the California Court of Appeal determined that it was not "reason-

---

1. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), does not bar the retroactive application of the *Brecht* standard to Henry's case. *Teague* held that a new constitutional rule of criminal procedure may generally not be applied retroactively to a case on collateral review. *Id.* at 307, 109 S.Ct. at 1073–74. However, *Teague* also held that "once a new rule is applied to the defendant in the case announcing

the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Id.* at 300, 109 S.Ct. at 1070 (quotation omitted). Because the Supreme Court applied the *Brecht* standard to Brecht himself, *Brecht*, —— U.S. at ——, 113 S.Ct. at 1722, "evenhanded justice" thus requires that we apply it to Henry as well.

ably probable" that Henry would have been acquitted had the Hackett testimony not been introduced (the *Watson* standard), it effectively determined that the testimony had not had a "substantial and injurious effect or influence" on the outcome (the *Brecht* standard).

Henry has thus made "essentially the same arguments" before the state and federal courts regarding both the existence of federal constitutional error and the prejudicial impact thereof. We hold that he has exhausted his state post-conviction remedies.

2. *Due process violation.*

We next consider whether in light of the record as a whole, the admission of the Hackett testimony and the subsequent jury instruction violated Henry's federal due process right; if so, we must then determine whether the error was sufficiently prejudicial as to warrant reversal. We answer both questions in the affirmative.

■ The admission of inculpatory testimony violates due process only "if there are *no* permissible inferences the jury may draw from the evidence" and the testimony is "of such quality as necessarily prevents a fair trial." *Jammal*, 926 F.2d at 920 (quotation omitted). *See also McGuire*, 502 U.S. at ——, 112 S.Ct. at 481–82, 116 L.Ed.2d 385 (1991). Hackett's testimony was not probative of any material issue in the case.[2] As the California Court of Appeal stated in its opinion, "[t]he only way [Henry's] denial or the accompanying exculpatory explanatory statement would be probative at all is if it showed consciousness of guilt. To do this, [his] earlier statement would have to be shown to be false...." The court noted that the jury heard no evidence regarding the truth or falsity of Hackett's son's accusation, and therefore had no basis on which to judge the truth or falsity of Henry's denial of that

accusation. The court therefore concluded, "without evidence from which the jury could determine [Henry's] statement to Hackett was false *it had no probative value at all* (emphasis added)." We agree. There were no permissible inferences the jury could have drawn from Hackett's testimony, and it was so inflammatory as to necessarily have deprived Henry of a fair trial. Its admission therefore violated Henry's due process rights.

Furthermore, the testimony and subsequent jury instruction were highly prejudicial. The prosecution's case against Henry was not particularly strong. The main prosecution witness was Andrew himself, who was only six or seven years old when the alleged molestation occurred. The defense offered evidence that cast doubt on Andrew's testimony, such as the fact that people could see through the windows of Henry's office and the fact that Andrew's parents were late and could have arrived at any point during the occurrence of the alleged molestation.

The prosecution bolstered Andrew's testimony with that of the Yehs, who testified they had heard rumors that Henry had molested Andrew; when they confronted Henry with that allegation, Henry responded that something had happened but that it had been misinterpreted. Hackett's testimony implied that Henry lied to Hackett and thus also to the Yehs, despite the fact that no evidence was presented to show that Henry's explanation to Hackett was false. As the magistrate pointed out, Hackett's testimony was particularly prejudicial given the "emotionally charged atmosphere present in any child abuse prosecution."

The prejudicial nature of the testimony was magnified by its timing. The prosecution was allowed to re-open its case-in-chief to present Hackett as the last witness, and he testified on the day of closing arguments.

---

2. This fact distinguishes Hackett's testimony from the prior injury evidence at issue in *McGuire*. There, the defendant had been tried for the killing of his infant daughter, and the prosecution had introduced evidence indicating that the baby had earlier suffered rectal tearing and fractured ribs. *McGuire*, 502 U.S. at ——, 112 S.Ct. at 478. McGuire was convicted and subsequently sought habeas relief on the ground

that this prior injury evidence was irrelevant and highly prejudicial. *Id.* at ——, 112 S.Ct. at 479. The Supreme Court held that the evidence was relevant because it tended to show that the baby's death was not accidental and thus was probative of intent. *Id.* at ——, 112 S.Ct. at 480–81. Here, however, Hackett's testimony did not tend to make any of the elements of the charged offense more likely.

The prosecutor emphasized the testimony at length in his closing argument. The trial court's jury instructions only compounded the prejudicial effect. The California Court of Appeal found that it was error to admit the testimony of Hackett and, although it found the error not to be prejudicial,[3] noted:

> The instruction given to the jury, while advising them the former accusation and denial cannot be used to show appellant has bad character or a disposition to commit such acts but only to determine whether his out-of-court explanation of his conduct is genuine, of necessity required the jury to focus on the prior accusation to determine whether his present denial was not true. The only way such a determination could be made is to assume the earlier accusation was true. The instruction virtually requires the inference the first part of the instruction appears to forbid.

The instruction was given not once but twice: once directly before Hackett's testimony and again during the general jury instructions.

We hold that the testimony and jury instruction were highly prejudicial, and they rendered Henry's trial fundamentally unfair and denied him due process. We find that Henry has shown that the testimony and jury instruction had a "substantial and injurious effect or influence" on the jury's verdict, and the district court's order granting the petition is affirmed.

AFFIRMED.

BRUNETTI, Circuit Judge, dissenting.

The majority relies on this court's decision in *Tamapua v. Shimoda*, 796 F.2d 261 (9th Cir.1986), to find that Henry satisfied the exhaustion requirement. While it is not for this panel to call *Tamapua* itself into question, I believe that the majority's interpretation of *Tamapua* as controlling the outcome here brings *Tamapua* into conflict with the Supreme Court's decision in *Anderson v.* *Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982).

My review of the state court record compels me to conclude that, contrary to the requirement of *Anderson*, Henry did not provide the California courts with a fair opportunity to apply the legal principles controlling his federal due process claim. As a result, Henry failed to exhaust his state court remedies and the majority errs in reaching the merits of his petition.

**I**

Our review of Henry's state court proceedings must be governed by the Supreme Court decision in *Anderson*. *Anderson* refined the standard declared in *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, and set forth this guiding principle: "28 U.S.C. § 2254 requires a federal habeas petitioner to provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.... [T]he habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claim." 459 U.S. at 6, 103 S.Ct. at 277 (citations and internal quotations omitted).

In *Anderson*, the Court reversed the Sixth Circuit's affirmance of a federal district court's conditional grant of Harless's application for a writ. The challenge to Harless's state trial involved a jury instruction on whether malice should be implied from the defendant's use of a weapon. In Michigan state court, Harless had presented the operative facts upon which his federal claim would be based, argued that the instruction was reversible error, and cited a Michigan decision grounded in state law only. Harless's federal *Sandstrom* claim[1] addressed the same instruction and also argued that its use

---

**3.** We reject the Court of Appeal's conclusion that the inflammatory impact of Hackett's testimony was diminished in this case because "evidence was properly received on six similar charged offenses involving a different victim [Michael]" and if jurors were to be prejudiced against appellant it was from that more specific testimony that bias may have arisen. Henry was not convicted on any of these charges and was *only* convicted of the charges involving Andrew.

**1.** *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

represented error. The Supreme Court held that Harless had not exhausted this claim in state court, in that exhaustion required more than presentation to the state courts of all facts necessary to support the federal claim, and *more than* that a *"somewhat similar* state-law claim was made." *Id.* (emphasis added). *Anderson* thus demands a close examination of the record.

The majority opinion here turns instead on *Tamapua*'s gloss on *Anderson,* which seems to allow a finding of exhaustion if Henry's state court claim of miscarriage of justice was "essentially the same argument," *Tamapua,* 796 F.2d at 262, as a claim of denial of federal due process. Unfortunately, reliance on this *Tamapua* phrase is improvident and misleading, for it directs us away from the real basis of *Anderson.*

In *Tamapua,* this court said that a claim is fairly presented if the petitioner has described the operative facts and legal theory upon which his claim is based, even if he subsequently reformulates his claims somewhat. The decision equated "operative facts *and* legal theory" to the "substance" of the claim. 796 F.2d at 262 (emphasis added).

Tamapua had persistently argued in state court that the indictment and evidence were insufficient, and that the act for which he had been convicted was not a crime. We stated that Tamapua's argument before this court was "essentially the same," although it now carried a federal due process label. The court concluded that Tamapua's state court claims had satisfied the fair presentation requirement because Tamapua's primary contention in state court proceedings was that he had been convicted with insufficient evidence, and that sufficiency of the evidence used to convict is a fundamental concern of the due process clause. 796 F.2d at 262–63 (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970)). Moreover, the *Tamapua* court observed that:

> In Tamapua's reply brief to the state supreme court, he correctly cited *State v. Lima,* 64 Haw. 470, 474, 643 P.2d 536, 539 (1982), for the proposition that "it is well established as a precept of *constitutional* as well as statutory law that an accused in a criminal case can only be convicted upon

proof by the prosecution of every element of the crime charged beyond a reasonable doubt."

*Id.* at 263. Declaring that exhaustion did not mean that Tamapua must have "invoke[d] the talismanic phrase 'due process of law' in the state proceedings to gain access to the federal courts," the court decided that "the Hawaii Supreme Court had a full and fair opportunity to address the substance of Tamapua's claims." *Id.*

The crux of *Tamapua* was this judgment that the Hawaii Supreme Court had had a full and fair opportunity to address the substance of Tamapua's federal claim. Contrary to the assertion of the majority here, *Tamapua* did *not* set up a new exhaustion test based upon whether "essentially the same" arguments were made in state and federal courts. I can discern no such standard from *Anderson* and *Picard,* and I believe the majority now erroneously creates such a test by employing the *Tamapua* language in contravention of *Anderson*'s teaching. *Tamapua* is necessarily only an application of *Anderson* and *Picard,* not a novel legal precedent.

I thus disagree with the majority's use of *Tamapua* here. *Anderson* requires that the specific federal constitutional argument must be presented to or considered by the state court. *Anderson,* 459 U.S. at 7, 103 S.Ct. at 277. The Supreme Court there *rejected* the Sixth Circuit's conclusions that "the due process ramifications" of Harless's argument to the Michigan court were "self-evident" and that reliance on a state-court case was sufficient to present the state court with the substance of his due process challenge to the malice instruction. Henry's state challenge had the same defect.

The majority's reading of *Tamapua* is unnecessary; it is also wrong because it permits outcomes that contradict the specific requirements and holding of *Anderson.*

## II

As *Anderson* requires, let us compare the claim Henry actually made in state court to the substance of his federal claim in habeas, and then consider whether the state courts had a fair opportunity to apply the control-

ling federal legal principles to the facts bearing on Henry's constitutional claim. *Anderson*, 459 U.S. at 6–7, 103 S.Ct. at 277–78; *Tamapua*, 796 F.2d at 263. In both cases, Henry argued that admission of the Hackett testimony was reversible error, but the similarity largely ends there.

The state law claim was that: (1) admission of the testimony was error under the California Evidence Code; and (2) the error required reversal because it had resulted in a "miscarriage of justice" under Article VI, § 4½ (now § 13) of the California Constitution. Given the elaboration of this standard in *People v. Watson*, 46 Cal.2d 818, 836, 299 P.2d 243 (1956), *cert. denied*, 355 U.S. 846, 78 S.Ct. 70, 2 L.Ed.2d 55 (1957), a California reviewing court could not reverse Henry's conviction on the basis of this claim unless Henry could demonstrate that it was *reasonably probable* that a result more favorable to him would have been reached absent admission of the Hackett testimony.[2]

In his federal habeas petition, Henry contended that he had been denied due process at trial because evidence of an uncharged crime was erroneously admitted (the Hackett testimony) and was then coupled with a jury instruction emphasizing that same evidence. Had Henry presented this federal claim to the state courts, he would have argued that the error had "so fatally infected the proceedings as to render them fundamentally unfair," *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991), such that it acquired federal due process dimensions and should be analyzed under the prejudice standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Chapman* would then have mandated reversal unless the *state* showed that the constitutional error was "harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. Henry did not present, nor did the California courts of their own volition consider, such a federal claim.

The California courts would thus have applied a markedly different prejudice standard to Henry's claim had they considered it as a federal due process challenge. Instead of the state-law *Watson* reasoning the California courts actually used, they would have applied the federal *Chapman* standard (not *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), as the majority asserts[3]), and the state and not Henry would have carried the burden regarding a prejudice showing. The *Chapman* analysis would have been more favorable to Henry, thus giving the state a greater opportunity to correct its own mistake.

Under *Anderson*, the exhaustion requirement mandates that the substance of a federal claim be asserted with *particularity* in the state court. *Anderson*, 459 U.S. at 7, 103 S.Ct. at 277–78. Henry's citing of a state court decision predicated on state law (e.g., *Watson*) does not apprise the state reviewing court of a potential federal claim. *Id.* at 7 n. 3, 103 S.Ct. at 277–78 n. 3. While this case is at least as close as *Anderson*, under these principles the difference between the *Watson* and *Chapman* standards dictates the conclusion that Henry failed to exhaust his federal claim in state court, even if one accepts the majority's equation of "miscarriage of justice" with "fundamental[ ] unfair[ness]." To the extent the majority employs the *Tamapua* standard of "essentially the same argument" to find exhaustion, it distorts the required analysis into a semantic exercise, allowing federal courts to construe and consider federal claims that were never fairly presented to or considered by—and thus never exhausted in—the state courts. *Picard*, 404 U.S. at 276, 92 S.Ct. at 512–13. *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278.

---

**2.** Parenthetically, there is nothing in *Watson* to suggest that its mention of "the constitutional requirements of a fair trial and due process" was anything other than a reference to the *state* constitution's guarantees. *Watson*, 46 Cal.2d at 835, 299 P.2d 243. *See Cal. Const.* Art. I, § 15 (fair trial and due process guarantees in criminal cases). The California Supreme Court in *Watson* cited only its own precedents in support of this reference. 46 Cal.2d at 835–36, 299 P.2d 243.

**3.** The majority attempts, without visible support, to skate over this defect in its analysis. It is irrelevant that *if* Henry had exhausted his federal claim in state court a federal habeas court might have employed the *Brecht* standard in evaluating the collateral attack.

A review of the record confirms that the California courts were not apprised of Henry's federal claim.

## III

I have examined the entire state-court record available to us in this case. Henry's written materials cited only provisions of the California Constitution, California statutes, and California state case law. At trial, his counsel did not mention other sources of authority.

Henry never suggested that the trial court's admission of the testimony at issue violated due process or any other federal right. Henry's only invocations of due process and "constitutional" rights (which may or may not have signaled a federal, as opposed to state, constitutional claim) occurred in relation to a different alleged defect of the trial having to do with the specificity of the charge upon which Henry was convicted, a matter which he has not pursued on appeal.

A. *The State Trial Court.* The trial court based its decision to admit the testimony upon California state-law cases interpreting the California Evidence Code that held admissible, in a trial on a given charge, evidence of the defendant's similar prior explanations regarding similar previous allegations against him. The trial court additionally considered *Cal.Evid.Code* § 352 (inadmissibility because of prejudicial effect requires excess of prejudice over probative value) and found the testimony admissible. The limiting instruction came from the same cases as well as California model instructions.

Henry's counterarguments focused on rebutting the state's use of the California state-law cases and asserted that other California state-law cases precluded the evidence. He reargued the same ground during the court's consideration of his motion for a new trial.

Thus, at no time during proceedings in the state trial court did Henry argue that admission of the Hackett testimony was anything more than an error under the California Evidence Code and California cases interpreting *state* law.

B. *Appellate Proceedings.* Henry's Opening Brief for the California Court of Appeal made "essentially similar" arguments with respect to this aspect of the trial. He argued that the testimony was inadmissible as both hearsay and propensity act evidence. Henry continued to challenge the authority of the state-law cases upon which the trial court had relied, and contended that the prejudicial effect of the testimony had outweighed the probative value. Further, Henry claimed that the state had improperly withheld the evidence until the end of the case, citing various state-law cases holding that such conduct could render the evidence inadmissible.

Henry's brief concluded that the alleged error had been highly prejudicial and that (as Art. VI, § 13 of the California Constitution required him to plead) the error had resulted in a "miscarriage of justice." He cited *People v. Watson* for the test regarding prejudicial effect. Henry's Reply Brief covered no new ground.

Although we have no transcript of the argument in the Court of Appeal, that court's decision demonstrates that the court was unaware of any claims based upon federal law. The court found that the trial court had erred in admitting the testimony, but did not find prejudice to Henry: "we cannot say the result would probably have been different had the evidence not been adduced at the end of trial." This standard comes from California's own *Watson* test which, as we know, differs from the federal *Chapman* standard the court would properly have applied to an error of federal law. One judge dissented on the basis that the majority's *Watson* assessment was simply wrong, but suggested no new sources of law. The opinion does demonstrate that the California courts actually decided a claim of miscarriage of justice.

C. *Petition for Review in the California Supreme Court.* Henry's Petition for Review in the California Supreme Court returned to the miscarriage of justice argument with respect to the challenged testimony. Henry contended that admission of the Hackett testimony was "reversible error under Article VI, Section [13] of the Constitution and Evidence Code § 353(b)." He con-

tested the Court of Appeal's *Watson* analysis of prejudice, and asked the state Supreme Court to clarify the *Watson* standard, but Henry did not suggest that use of *Watson* was in any sense a federal constitutional error.

I have also reviewed each of the California decisions Henry cited, and none of them refers to federal constitutional provisions, federal statutes, or federal decisions in any manner which should have apprised the state courts of Henry's federal claim.

### Conclusion

In sum, Henry never indicated to the California courts any federal basis for his claim of error with respect to the testimony at issue, and he certainly did not argue for application of standards that were more than "somewhat similar" to the controlling federal legal principles. Each and every one of his arguments depended upon California sources of law and challenged the method of application, but never the underlying exclusive applicability, of those sources.

I conclude that Henry did not exhaust his state remedies and that this court should not have considered Henry's federal due process claim on the merits.