STATE OF HAWAI`I, Plaintiff-Appellee,
v.
KAEO JOHN REID ADAMS, Defendant-Appellant
No. 28333
Intermediate Court of Appeals of Hawaii
June 22, 2009.
On the briefs:
Okechukwu K. Amadi, Deputy Public Defender, for Defendant-Appellant.
Linda L. Walton, Deputy Prosecuting Attorney, County of Hawaii, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
WATANABE, Acting C.J., FOLEY and FUJISE, JJ.
Defendant-Appellant Kaeo John Reid Adams (Adams) appeals from the Judgment of Conviction entered by the Family Court of the Third Circuit (family court)[1] on December 13, 2006.[2] As his single point of error, Adams challenges the sufficiency of the evidence presented by the State of Hawai`i (State) in support of his conviction for Abuse of Household or Family Member in violation of Hawaii Revised Statutes (HRS) § 709-906(1) (Supp. 2008).[3] Adams argues that (1) there was insufficient evidence of his intent to abuse when his foot connected with his girlfriend's daughter's (child) eye, (2) the State failed to prove beyond a reasonable doubt that his conduct was not "immunized by the parental discipline defense of HRS § 703-309(1) (1993) (parental discipline defense),[4] and (3) the family court erred in ruling the parental discipline defense, as a matter of law, did not apply to Adams.
After a careful review of the issues raised, arguments advanced, applicable law, and the record in this case, we conclude that there was substantial evidence in support of the family court's finding of abuse of family or household member.
In rendering its verdict, the family court stated,
This case presented a situation involving what falls, I believe, into the category of common life experience; that is a young child having a euphemistically called accident, that is the ability  inability to control her bladder function.
It's not abnormal for a child at the age of six to have an accident. And it's not reasonable to view that occurrence as being willful, lazy, disobedient or any other type of misconduct requiring parental discipline. Such a problem, if it is recurrent, requires medical or psychological help and parental patience, understanding, and support.
Defendant, and apparently the child's mother, treated this problem inappropriately with disrespect for the child, lack of patience, lack of support and lack of understanding. Testimony that this child regularly ate all her meals alone in her room as a punishment for these accidents and other so-called bad behavior was to me, frankly, incomprehensible, as well as yelling at the child, grabbing the child, forcing the child to use the child's own clothes to clean up, lecturing the child and labeling the child as abnormal and so forth.
There was no testimony that the defendant, nor the child's mother, obtained advice from a pediatrician or child psychologist to find a cause for the bladder control problem or even try to educate themselves as to the appropriate response or treatment, but instead dealt with this issue in a manner that was harmful physically and psychologically to this child.
I considered the defense though, of  in HRS Section 703-309 raised by the defendant. However, I find that the force used was not reasonably related to the purpose of safeguarding or promoting the welfare of the minor, nor was it reasonably related to prevention or punishment of the minor's misconduct because having an accident is not misconduct for which any punishment is warranted, nor can such acts be construed as promoting the welfare of this minor child.
The defendant, an average sized male adult, while upset, grabbed the arm of the child, less than 50 pounds, six years old, a shy female child, and forced that child down to clean up the floor wherein the defendant's foot connected with the child's eye. Such an act created a foreseeable risk of causing bodily injury, disfigurement, extreme pain or mental distress or neurological damage.
I find that defendant's actions were done recklessly and actually caused bodily injury, bruising to the child's eye area and arm area, and causing the child mental distress, which I find to be substantial injury and is abuse.
I additionally find that the defendant jointly or formerly resided in the same dwelling unit as the [child] and is therefore a family or household member.
I find that there was substantial abuse to support a conviction of abuse of a family or household member, and therefore, I find the defendant guilty regarding Count I, Abuse of a Family or Household Member under 709-906(1).[5]
(Footnote added.)
Adams's challenge to the sufficiency of the evidence is based on his argument that evidence that he acted with the requisite, reckless state of mind[6] was insufficient.
On appeal, the test "is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." Id. (citations omitted). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." Id. (quoting State v. Lima, 64 Haw. 470, 475, 643 P.2d 536, 539 (1982)); accord [State v.] Gabrillo, 10 Haw. App. [448,] 459, 877 P.2d [891,] 896 (substantial evidence is "evidence which a reasonable mind might accept as adequate to support the conclusion of the factfinder") (citations and quotation marks omitted).
State v. Tanielu, 82 Hawai`i 373, 378, 922 P.2d 986, 991 (App. 1996). To "physically abuse" is to cause bodily injury to another, that is to say, to "to maltreat in such a manner as to cause injury, hurt, or damage to that person's body." State v. Nomura, 79 Hawai`i 413, 416, 903 P.2d 718, 721 (App. 1995).
Registered Nurse Margaret Oates (Nurse Oates) testified that she was the senior nurse working in the emergency room of the Kona Community Hospital two days after the incident in question and saw child, who was brought in by child's foster mother. It was Nurse Oates's responsibility to assess the reason child was brought to the hospital for triage purposes. Child was about six years old and was a "slim young girl" of about fifty pounds. Child presented with several "bruises on her body," "above her right eye, on her arm, a small one on her leg, a small one on her tummy, her finger." When asked how she got the bruises, child only responded that "My mama's boyfriend kicked and hit me." No other explanation was given. Nurse Oates estimated that the bruises were more than 24 hours old and were as much as a week old.
Hawaii Police Department (HPD) Detective Gerald Wike (Det. Wike) testified that he interviewed child three days after the incident in question, saw a black and blue mark on the side of child's eye and that the photographs of child, introduced into evidence as State's Exhibits 1 and 2, accurately reflected the marks that he saw on child on the day of his interview.[7] Det. Wike stated that he did not observe other injuries but that child complained that "her side was hurt" and that she "experienced pain during the incident itself." HPD Detective Scott Kurashige (Det. Kurashige) testified that he interviewed Adams, who told Det. Kurashige that Adams had grabbed child by the arm and the neck and "pushed her down towards the ground."
Child testified[8] that on September 10, 2005, Adams discovered that she had urinated on the floor, was upset and had made her clean up the mess. Adams kicked child on the side of her right eye more than once. Child said that Adams did not explain why he kicked her. Although Adams had not previously disciplined child for urinating on the floor by kicking her, she thought Adams was disciplining her by kicking her on this occasion.
Taking this evidence in the light most favorable to the prosecution and giving due deference to the trier of fact to assess credibility, weigh the evidence and make reasonable inferences from this evidence, we conclude there was substantial evidence supporting the family court's finding that Adams kicked child recklessly causing bodily injury, thereby committing the offense of abuse of household member in violation of HRS § 709-906(1). See Nomura, 79 Hawai`i at 416, 903 P.2d at 721.
Adams also challenges the family court's treatment of his parental discipline defense on two grounds. Adams argues that when the family court observed that it was not unusual for children of child's age to have urinary control problems and concluded that Adams's treatment of child's "accidents" as misconduct requiring discipline was unreasonable, the family court rejected the defense as a matter of law.
We do not read the family court's decision as being so categorical. Initially, we note that the family court did not rule that parental discipline was foreclosed to Adams as a matter of law. The family court was entitled to take all circumstances of the offense into account when assessing whether the claim of parental discipline was "reasonably related to the purpose of safeguarding or promoting the welfare of the minor," HRS § 703-309(1)(a),[9] as this inquiry requires an objective review of a parent's judgment. State v. Thate, 106 Hawai`i 252, 262, 103 P.3d 412, 422 (App. 2004), see Annotation, Criminal Liability for Excessive or Improper Punishment Inflicted on Child by Parent, Teacher, or One in Loco Parentis, 89 A.L.R.2d 396, 1963 WL 13713 (1963 & Supp. 1995). To this end, the family court correctly considered whether child's incontinence was a matter over which she had control and thus was conduct amenable to correction through discipline, or whether it was a medical matter for which discipline would be ineffective as a deterrent.
Moreover, while there was no expert or other scientific evidence presented on this point, it is not true, as Adams argues, that there was no evidence pointing to the court's conclusion that child's incontinence was a medical or psychological concern. The testimony of both Adams and child's mother established that (1) child had many such mishaps in the past, (2) punishments of various kinds, including "grounding" or removing privileges and shouting at or belittling child had not stopped the behavior, (3) child would cry and be embarrassed by her behavior, and (4) the behavior coincided with child's father and half-sister moving to the mainland. Adams testified that he believed child's incontinence was because child was "too lazy." Neither Adams nor child's mother testified that they had sought professional help for child's problem. Thus, the family court's conclusion that Adams's treatment of child's incontinence as "misconduct" was inappropriate under these circumstances was supported by the evidence presented and not a ruling, as a matter of law, that the parental discipline defense was unavailable to Adams.
Finally, our review of the record reveals that there was substantial evidence rebutting Adam's parental discipline defense. There was substantial evidence that the force used by Adams was not reasonably related to safeguarding or promoting the welfare of the minor. HRS § 703-309(1)(a). Evidence of the size difference between child, a fifty-pound, six-year-old, and Adams, an "average sized male adult," that this kick was delivered to the child's head in the area of her eye, and that Adams himself testified he did not approve of disciplining girls by hitting them, all support a conclusion that the force used was not reasonably related to child's well being.
Reviewing all of the evidence presented, we conclude there was substantial evidence supporting the family court's finding that the force used by Adams was not reasonably related to prevention or punishment of misconduct.
Therefore, it is hereby ordered that the November 24, 2006 Judgment of Conviction entered by the Family Court of the Third Circuit is affirmed.
NOTES
[1] The Honorable Jeanne L. O'Brien presided.
[2] The Judgment of Conviction was dated nunc pro tunc to November 24, 2006.
[3] HRS § 709-906(1) provided at the time of the conduct charged as it does now,

Abuse of family or household members; penalty. (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.
For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.
[4] HRS § 703-309(1) provided at the time of the conduct charged as it does now,

Use of force by persons with special responsibility for care, discipline, or safety of others. The use of force upon or toward the person of another is justifiable under the following circumstances:
(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian or other responsible person, and:
(a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and
(b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.
[5] The family court acquitted Adams of Count II, Terroristic Threatening.
[6] Adams concedes that the State was obligated to prove only that he acted a reckless state of mind. See HRS § 702-208 (1993) and Commentary thereto. Recklessness is defined in HRS § 702-206(3) (1993) and provides,

(3) "Recklessly."
(a) A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.
(b) A person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial and unjustifiable risk that such circumstances exist.
(c) A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.
(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.
[7] Nurse Oates testified that she thought the bruises were more pronounced than depicted in the photographs.
[8] Adams had no objection to the qualification of child as competent to testify.
[9] We also note that Adams testified that he did not hit child on this occasion and did not believe that one should ever hit girls as a form of discipline. Nevertheless, Adams argued in his motions for judgment of acquittal at the end of the State's case and after the presentation of all evidence as well as in closing argument, that the parental discipline defense under HRS § 703-309(1) applied.